ACCEPTED
03-14-00637-CR
6846485
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/9/2015 1:32:57 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00637-CR

# IN THE COURT OF APPEALS
## THIRD DISTRICT
## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/9/2015 1:32:57 PM
JEFFREY D. KYLE
Clerk

## CHRISTOPHER BRIAN ROBERTS,
### APPELLANT

### vs.

## THE STATE OF TEXAS,
### APPELLEE

APPEAL FROM THE 403RD JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-302227

## STATE'S BRIEF

ROSEMARY LEHMBERG
DISTRICT ATTORNEY
TRAVIS COUNTY, TEXAS

M. SCOTT TALIAFERRO
TEXAS BAR NO. 00785584
ASSISTANT DISTRICT ATTORNEY
DIRECTOR, APPELLATE DIVISION
DISTRICT ATTORNEY'S OFFICE
P.O. BOX 1748
AUSTIN, TEXAS 78767
PHONE: 512.854.3626   FAX: 512.854.4810
EMAIL:   scott.taliaferro@traviscountytx.gov
        AND AppellateTCDA@traviscountytx.gov

## THE STATE CONDITIONALLY REQUESTS ORAL ARGUMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ........................................... vii

STATEMENT OF THE CASE ........................................................................ vii

STATEMENT OF FACTS ............................................................................... 2

SUMMARY OF THE ARGUMENTS ................................................................ 4

THE STATE'S REPLY TO THE FIRST POINT OF ERROR ............................. 5

       THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED THE APPELLANT'S REQUEST FOR A JURY INSTRUCTION ON THE OFFENSE OF MANSLAUGHTER. ............................................................................ 5

1. Two-part test governing trial court's submission of lesser offense to the jury .................................................................................................. 5

2. The Court should apply the abuse-of-discretion standard to the trial court's determination as to whether manslaughter was a rational alternative ......... 8

3. Manslaughter is a lesser-included offense ........................................... 11

4. There was no evidence that the defendant was guilty only of manslaughter, and the evidence did not establish manslaughter as a rational alternative .................................................................................................. 12

   a.Evidence of "their history of fighting" did not support the requested instruction .................................................................................. 13

   b.Evidence of "sex with strangulation" did not support the requested instruction .................................................................................. 17

   c.The other evidence cited in the appellant's brief did not support the requested instruction .................................................................... 23

5.Conclusion .................................................................................... 26

THE STATE'S REPLY TO THE SECOND POINT OF ERROR..........................26

THE APPELLANT'S CLAIM CHALLENGING THE ADMISSION OF DETECTIVE WHITE'S OPINION TESTIMONY HAS NOT BEEN PRESERVED FOR REVIEW. .........26

1.The cited objection was untimely...................................................................27
2.The appellate claim does not comport with the trial objection...........................29
3.Conclusion .............................................................................................30

THE STATE'S REPLY TO THE THIRD POINT OF ERROR ...........................31

THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT THE APPELLANT'S MURDER CONVICTION....................................................................................31

1. Standard governing legal-sufficiency review.......................................................31
2. The evidence is legally sufficient to support the verdict ....................................33
   a. The verdict is supported by Det. White's testimony about his belief that the appellant intentionally and knowingly caused the death ..............................34
   b. The appellant's admissions support an inference that he intentionally or knowingly caused the victim's death....................................................................36
   c. Evidence that the appellant strangled the victim's limp body supports an inference that he intentionally or knowingly caused her death .........................38
   d. Evidence favoring the appellant must be disregarded ....................................40
   e. The victim's injuries suggest that she was strangled during the course of a broader assault on her...................................................................................41
3. Conclusion    42

THE STATE'S REPLY TO THE FOURTH POINT OF ERROR........................43

THIS COURT SHOULD REJECT THE APPELLANT'S CLAIM THAT THE PROSECUTOR MADE IMPROPER STATEMENTS DURING THE STATE'S FINAL CLOSING ARGUMENT. ...............................................................................43

1. Law governing jury argument .........................................................................43
2. Standard governing appellate review.................................................................44
3. Because the appellant fails to challenge any ruling of the trial court, nothing is presented for appellate review ..........................................................44
4. The trial court did not abuse its discretion .......................................................45
   a. The prosecutor's argument that victim decided to take action......................46
   b. The prosecutor's arguments concerning the passage of time and the prosecutor's argument directed toward nurses on the jury...............................47
      i. The first objection ...................................................................................49
      ii. The second objection ..............................................................................50
      iii. The remaining objections.........................................................................52
   c. Prosecutor's arguments concerning the victim's injuries ..............................53
5. Any error was harmless...................................................................................54

6. Conclusion .......................................................................................56

PRAYER .............................................................................................57
CERTIFICATE OF COMPLIANCE.................................................57
CERTIFICATE OF SERVICE..........................................................58

# TABLE OF AUTHORITIES

**Cases**

*Allen v. State*, 249 S.W.3d 680 (Tex. App.—Austin 2008) ...................................32

*Alvarado v. State*, 912 S.W.2d 199 (Tex. Crim. App. 1995)...................................32

*Anderson v. State*, 416 S.W.3d 884 (Tex. Crim. App. 2013) ..........................passim

*Archie v. State*, 221 S.W.3d 695 (Tex. Crim. App. 2007)....................................44

*Arnold v. State*, 234 S.W.3d 664 (Tex. App.—Houston [14th Dist.] 2007) .........12

*Berry v.* State, 233 S.W.3d 847 (Tex. Crim. App. 2007) ................................43, 47

*Bignall v. State*, 887 S.W.2d 21 (Tex. Crim. App. 1994) ..................................... 7

*Brown v. State*, 270 S.W.3d 564 (Tex. Crim. App. 2008)....................................43

*Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012)...........................passim

*Clark v. State*, 365 S.W.3d 333 (Tex. Crim. App. 2012) ......................................27

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)..............................31, 32

*Cockrell v. State*, 933 S.W.2d 73 (Tex. Crim. App. 1996)....................................44

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001) ................................32, 35

*Davis v. State*, 329 S.W.3d 798 (Tex. Crim. App. 2010) ......................................45

*Demond v. State*, 452 S.W.3d 435 (Tex. App.—Austin 2014, pet. ref'd)...............35

*DeRusse v. State*, 579 S.W.2d 224 (Tex. Crim. App. 1979) ............................52, 54

*Ethington v. State*, 819 S.W.2d 854 (Tex. Crim. App. 1991)..................................29

*Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on reh'g)............. 6

*Fairow v. State*, 943 S.W.2d 895 (Tex. Crim. App. 1997)....................................33

*Feldman v. State*, 71 S.W.3d 738 (Tex. Crim. App. 2002) ....................7, 16, 22, 26

*Gaddis v. State*, 753 S.W.2d 396 (Tex. Crim. App. 1988)....................................43

*Goad v. State*, 354 S.W.3d 443 (Tex. Crim. App. 2011) ...............................passim

*Gongora v. State*, No. AP-74,636, 2006 Tex. Crim. App. LEXIS 2531 (Tex. Crim. App. Feb. 1, 2006) (not designated for publication)...........................................11

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007) .......................................... 5

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .......................................32

*Jackson v. Virginia*, 443 U.S. 307 (1979)......................................................passim

*Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999)...........................................44

*Lemon v.* State, 298 S.W.3d 705 (Tex. App.–San Antonio 2009, pet. ref'd.).........44

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). .....................................31

*Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000) ..................................54

*Martinez*, 17 S.W.3d 677 (Tex. Crim. App. 2000) ...............................................54

*Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002) ......................................23

*Mayberry v. State*, 532 S.W.2d 80 (Tex. Crim. App. 1975)............................52, 54

*McKithan v. State*, 324 S.W.3d 582 (Tex. Crim. App. 2010) ................................ 6

*Miles v. State*, 312 S.W.3d 909 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)44

*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988).............................32, 33

*Nichols v. State*, 504 S.W.2d 462 (Tex. Crim. App. 1974) ..............................52, 54
*Pope v. State*, 161 S.W.3d 114 (Tex. App. – Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006) ...........................................................................54
*Rezac v. State*, 782 S.W.2d 869 (Tex. Crim. App. 1990).......................................30
*Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993) .................................. 7
*Salazar v. State*, 127 S.W.3d 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).............................................................................................................27
*Sanders v. State*, 119 S.W.3d 818 (Tex. Crim. App. 2003) ............................33, 41
*Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013) .......................27, 30
*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991) .....................................32
*Scaggs v. State*, 18 S.W.3d 277 (Tex. App.—Austin 2000)...................................29
*Skinner v. State*, 956 S.W.2d 532 (Tex. Crim. App. 1997) ..........................8, 16, 22
*Sweed v. State*, 351 S.W.3d 63 (Tex. Crim. App. 2011) ......................................... 8
*Thierry v. State*, 288 S.W.3d 80 (Tex. App.—Houston [1st Dist.] 2009).........52, 54
*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004)................................10
*Urtado v. State*, 333 S.W.3d 418 (Tex. App.—Austin 2011, pet. ref'd)............30, 50
*Williams v. State*, 270 S.W.3d 112 (Tex. Crim. App. 2008) ..................................52
*Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000)...........................................45
*York v. State*, 258 S.W.3d 712 (Tex. App. – Waco 2008, pet. ref'd) .....................44
*Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004).........................................52

**Statutes**

Tex. Code Crim. Proc. art. 37.09.....................................................................6, 12
Tex. Code Crim. Proc. art. 38.04..........................................................................31
Tex. Penal Code § 19.02 ..........................................................................11, 12, 33
Tex. Penal Code § 19.04 ......................................................................................12
Tex. Penal Code § 6.03 .........................................................................................38
Tex. Penal Code § 6.04 .........................................................................................22

**Rules**

Tex. R. App. P. 33.1 .....................................................................................passim
Tex. R. App. P. 38.1 .............................................................................................45
Tex. R. App. P. 44.2 .............................................................................................54
Tex. R. Evid. 103 .................................................................................................29
Tex. R. Evid. 701 .................................................................................................27

## STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel for the State believes that oral argument is unnecessary because the briefs filed by the parties adequately present the facts and legal arguments. However, if the Court does grant the appellant's request for oral argument, the State respectfully requests that the Court also permit the State to provide oral argument.

## STATEMENT OF THE CASE

The appellant was charged by indictment with committing the offense of murder in relation to the death of Kirstin Anderson. CR 16.[1] On September 24, 2014, a jury was sworn and a trial on the merits commenced. 8 RR 10. On September 26, 2014, the jury found the appellant guilty of murder as alleged in the indictment. 10 RR 35.

The punishment phase of the trial commenced on September 26, 2014. 10 RR 36. Later that same day, the jury assessed the appellant's punishment at confinement for a term of 50 years in the Institutional Division of the Texas Department of Criminal Justice. 10 RR 152. On that same date, the trial court, in open court, imposed that sentence upon the appellant. 10 RR 153.

---

[1]A citation in the form of "CR *y*" refers to page *y* of the Clerk's Record, and a citation in the form of "*x* RR *y*" refers to page *y* of volume *x* of the Reporter's Record.

On October 3, 2014, the appellant filed a notice of appeal. CR 255. The trial court has certified that the appellant has the right to appeal. CR 247.

No. 03-14-00637-CR
IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

CHRISTOPHER BRIAN ROBERTS,
APPELLANT

vs.

THE STATE OF TEXAS,
APPELLEE

APPEAL FROM THE 403RD JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-302227

STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS:

The State of Texas, by and through the District Attorney for Travis County, respectfully submits this brief in response to that of the appellant, Christopher Brian Roberts.

## STATEMENT OF FACTS

On November 15, 2012, the appellant called 911 and requested an ambulance. *See* 8 RR 177; State's Pretrial Exh. 1 at 9. When the 911 operator asked what happened, the appellant responded, "[I] came home and my girlfriend … she's the landlord of the house and she's about forty years old … she's not in

2

good health, and now I'm pretty positive she's dead." State's Exhibit 115. Police and emergency medical personnel arrived at the scene shortly thereafter and found the body of Kirstin Anderson ("the victim"). 8 RR 24-28.

It was about 5:00 p.m. on November 15 when the body was discovered by police, but autopsy findings were consistent with the victim having died at least 12 hours earlier and even "the night before[,] on the 14th." *Id*. 8 RR 177. The autopsy confirmed what the police suspected: the victim had been strangled to death. 8 RR 183.

The appellant was interviewed three separate times by an APD detective. The appellant gave conflicting versions of events. During the final interview, he confessed his guilt, stating, *inter alia*, "That had to have been it. She mentioned my father, I slapped her, freaked out thinking I thought I was gonna lose it, go to jail, lose my job, be out back on the streets again for winter, so I just killed her." *Id*. State's Exh. 149 at 32:53; State's Pretrial Exh. 3 at 15 (emphasis added).[2] *See*

---

[2] Detective White's third interview of the appellant occurred on November 19, 2012, at the Travis County Correctional Complex in Del Valle. 9 RR 104-05. A transcript of that interview was admitted into evidence during a pretrial hearing as State's Pretrial Exhibit 3. *See* 2 RR 23. Although the transcript was not admitted into evidence at trial, each juror was permitted to review a copy of the transcript while the recording of the conversation (i.e., State's Exhibit 149) was being published to the jury. *See, e.g.,* 9 RR 109, 111. For the convenience of this Court, citations to the applicable page(s) of transcript will sometimes be used in this brief in lieu of citations to the actual recording. All such citations to the transcript should be considered as citations to the corresponding portions of the actual recording. In his brief, the appellant likewise relies upon that pretrial exhibit when addressing the content of the actual recording. *See* App. Brief at 23 n3.

3

*also* State's Pretrial Exh. 3 at 14 (where the appellant told detective, "I agree, I saw red, killed her. Oops.").

Other facts will be addressed below, where pertinent to the issues raised by the appellant's brief.

## SUMMARY OF THE ARGUMENTS

**Point One:** The appellant claims that the trial court abused its discretion when it denied his request for a jury instruction on the offense of manslaughter. That claim lacks merit, however, because there was no evidence that the defendant was guilty only of manslaughter, and also because the evidence did not establish manslaughter as a rational alternative to the offense of murder.

**Point Two:** The appellant's claim challenging the admission of Detective White's opinion testimony has not been preserved for appellate review. The objection cited in the appellant's brief was untimely, and that objection asserted a legal basis that differs from the basis asserted on appeal.

**Point Three:** The evidence is legally sufficient to support the appellant's murder conviction.

**Point Four:** This court should reject the appellant's claim that the prosecutor made improper statements during the State's final closing argument. Because the appellant challenges only the State's arguments, and not any ruling by the trial court, nothing is presented for appellate review. If the Court reaches the

4

merits of the appellant's claim, it should find that the trial court did not abuse its discretion and/or that any error was harmless.

## THE STATE'S REPLY TO THE FIRST POINT OF ERROR

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED THE APPELLANT'S REQUEST FOR A JURY INSTRUCTION ON THE OFFENSE OF MANSLAUGHTER.

<u>Argument and Authorities</u>

In his first point of error, the appellant asserts, "The trial court abused its discretion in denying Appellant's requested jury instruction on the lesser-included offense of manslaughter." App. Brief at 8. This Court should find that the trial court did not abuse its discretion.

1. <u>Two-part test governing trial court's submission of lesser offense to the jury</u>

To determine whether a lesser offense should be submitted to the jury for its consideration, a trial court is required to apply a two-step analysis. First, the court must determine whether the offense at issue is a lesser-included offense of the charged offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). This step of the analysis presents a question of law and is governed by article 37.09 of the Code of Criminal Procedure. Under that article, an offense is a lesser-included offense if, *inter alia*, "(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged" or "(3) it differs from

5

the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. art. 37.09(1), (3).

During this first step of the analysis, courts use the cognate-pleadings approach. *Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on reh'g). Under that approach, the elements of the lesser-included offense need not have been pled in the indictment if they can be deduced from facts alleged in the indictment. In other words, an offense is a lesser-included offense "if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273. Courts are required by the "functional-equivalence concept" to examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense. *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010).

If the trial court finds the offense to be a lesser-included offense under section (1) or section (3) of article 37.09, the court must then proceed to the second step of the analysis. *Cavazos*, 382 S.W.3d 377, 383. During the second step, the court is required to determine whether the evidence admitted at trial supports the requested instruction. "The evidence supports an instruction on a lesser-included

6

offense if it permits a rational jury to find the defendant guilty *only* of the lesser-included offense." *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (emphasis added); *see Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). "'Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.'" *Goad* at 446, quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). This is true regardless of whether that evidence is "strong, weak, unimpeached, or contradicted." *Rousseau*, 855 S.W.2d at 672.

Importantly, "the second prong also requires the trial court to examine the rationality of the lesser offense as an alternative to the greater offense." *Goad*, 354 S.W.3d 443, 453 (Alcala, J., concurring), citing *Rousseau*, 855 S.W.2d 666, 672-73. After examining the record for all evidence that tends to establish a lesser offense, the trial court, presuming the truth of all the evidence, must then decide whether the evidence supports the lesser offense as a valid, rational alternative to the charged offense. *See Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); *Goad*, 354 S.W.3d 443 (Alcala, J., concurring). The trial court determines whether a lesser offense is a valid, rational alternative to the charged offense by examining the evidence tending to support the lesser offense in the context of all the evidence that has been presented at trial. *Id*.

"It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a

7

lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997); *see Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). In other words, the lesser-included offense should be submitted to the jury only if there is "affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d 377, 385.

2. <u>The Court should apply the abuse-of-discretion standard to the trial court's determination as to whether manslaughter was a rational alternative</u>

According to the concurring opinion issued by Judge Alcala in *Goad*, 354 S.W.3d 443 (Tex. Crim. App. 2011), the Court of Criminal Appeals "has failed to clearly state and consistently apply the appellate standard of review for determining whether the trial court erred in that decision. This is problematic because the review standard determines the strength of the lens through which an appellate court may examine an issue on appeal." *Goad*, 354 S.W.3d at 450 (Alcala, J., concurring). In *Goad*, the majority declined to articulate a standard of review. *See Goad*, 354 S.W.3d 443, 447 (Keasler, J.) (where majority concludes, *inter alia*, "But even if [the abuse-of-discretion standard] were a preferable standard, it would affect neither our review of the court appeals's opinion nor the outcome in this case. Moreover, we did not grant review to determine the proper

8

standard of review, and neither party has briefed this issue.  Therefore, it would be inappropriate to address it.").  It does not appear that any standard of review has been articulated by the Court of Criminal Appeals in any of its post-*Goad* opinions.

In the instant case, this Court should apply the standards of review suggested by Judge Alcala in her *Goad* concurrence.  Regarding the first prong of the test described above (i.e., the issue of whether manslaughter is a lesser-included offense of murder), this Court should perform a *de novo* review.  *See Goad*, 354 S.W.3d at 450 (Alcala, J., concurring) ("We have explicitly stated that the first prong is a matter-of-law determination, and, therefore, *de novo* review is appropriate").

Two different standards of review should be applied in relation to the second prong.  As Judge Alcala points out, "In examining the evidence under the second prong, the trial court examines the record in two ways: It looks for any evidence that tends to show that the defendant is guilty only of a lesser-included offense, and it also examines all the evidence to determine whether the lesser offense is a rational alternative to the greater offense."  *Goad*, 354 S.W.3d at 452 (Alcala, J., concurring).  Regarding the issue of whether the record contains any evidence that tends to show that the appellant is guilty only of manslaughter, this Court should review the issue *de novo*.  *See id*. ("Because the trial court does not make any

credibility determinations and must consider all evidence regardless of its quality, this portion of the second-prong analysis strictly concerns a matter of law. *De novo* review is, therefore, appropriate because minimal deference to the trial court's assessment of the evidence is necessary.").

Significantly, "the rationality of the lesser offense" (*id.* at 453) as a valid alternative to murder in this case should be reviewed under the abuse-of-discretion standard:

> A trial court determines whether a lesser offense is a valid, rational alternative to the charged offense by examining the evidence tending to support the lesser offense in the context of all the evidence that has been presented at trial. Although the trial court presumes the credibility of all the evidence in deciding whether to instruct on a lesser-included offense, it is still in a better position than the appellate court to assess the evidence and determine whether the lesser-included offense is a rational alternative to the offense charged. This is because, unlike the appellate court, the trial court has the benefit of examining the physical appearance, demeanor, and cadence of speech of the witnesses and determining whether testimony is sarcastic, vague, or otherwise lacks clarity. Because the trial court received the evidence firsthand, the appellate court should review the trial court's decisions under the second prong only for an abuse of discretion.

*Goad*, 354 S.W.3d at 453 (Alcala, J., concurring) (citations and footnote omitted).

Although the Court of Criminal Appeals has not expressly adopted the abuse-of-discretion standard for use in this context, the language employed in some of its opinions provides some support for the application of that standard here. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (concluding that the "trial court did not abuse its discretion in concluding that there

was no evidence that would permit a jury rationally to find that appellant" was guilty only of the lesser-included offense); *Gongora v. State*, No. AP-74,636, 2006 Tex. Crim. App. LEXIS 2531 (Tex. Crim. App. Feb. 1, 2006) (not designated for publication) ("The trial court did not abuse its discretion in refusing to give the lesser-included offense instruction.").

It should be noted, further, that the appellant in the instant case likewise urges this Court to apply the abuse-of-discretion standard. *See, e.g.*, App. Brief at 8 ("A trial court's decision regarding the submission of a lesser-included offense is reviewed for an abuse of discretion").

3. Manslaughter is a lesser-included offense

In the case at bar, defense counsel requested that the offense of manslaughter be submitted to the jury. 9 RR 127. For purposes of the first prong of the required analysis, the State concedes that the offense of manslaughter is a lesser-included offense of the greater offense of murder. Here, the indictment alleged, *inter alia*, that the appellant "did then and there intentionally or knowingly cause the death of an individual, namely, Kirstin Anderson, by choking Kirstin Anderson with the Defendant's hands or arms, or by strangling Kirstin Anderson with the Defendant's hands or arms…" CR 16; *see* Tex. Penal Code § 19.02(b)(1) (providing that a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual").

11

A person commits the offense of manslaughter "if he recklessly causes the death of an individual." Tex. Penal Code § 19.04(a). Manslaughter is a lesser included offense in this case because "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. art. 37.09(3); *see, e.g., Arnold v. State*, 234 S.W.3d 664, 671 (Tex. App.—Houston [14th Dist.] 2007) ("There is no question here that the first prong of the test is satisfied: it is well-established that manslaughter is a lesser-included offense of murder… The only difference between the two offenses is the mental state required."); *see also Cavazos,* 382 S.W.3d 377, 384 (holding that manslaughter was lesser included offense of murder where murder indictment was predicated upon Penal Code sec. 19.02(b)(2)). The first prong of the two-part test has been satisfied.

4. <u>There was no evidence that the defendant was guilty only of manslaughter, and the evidence did not establish manslaughter as a rational alternative</u>

As Judge Alcala explained in her *Goad* concurrence, the second prong requires a trial court to examine the record in two ways: "It looks for any evidence that tends to show that the defendant is guilty only of a lesser-included offense, and it also examines all the evidence to determine whether the lesser offense is a rational alternative to the greater offense." *Goad*, 354 S.W.3d at 452 (Alcala, J.,

12

concurring). In the case at bar, neither aspect of the second prong supported the defense attorney's request for a manslaughter instruction.

During the charge conference, after defense counsel made that request, the trial court asked the attorney to identify evidence that, if the appellant was guilty, he was guilty only of manslaughter. 9 RR 127. In response, defense counsel referred to certain statements made by the appellant when he was first interviewed by APD Detective William White.[3] *See* 9 RR 127-29. This Court should find, however, that none of the statements made by the appellant during that first interview supported the request for an instruction on the offense of manslaughter.

a. Evidence of "their history of fighting" did not support the requested instruction

Referring to page seventeen of the transcript of the first interview, the defense attorney directed the trial court's attention to "the whole section where he's discussing that they would fight and he would restrain her until she calmed down." 9 RR 128-29; *see* 9 RR 127. That portion of the transcript reflects the following exchange between Detective White and the appellant:

DET WHITE: When you... when you detain her or restrain her how would you normally do it?

---

[3] The record reflects that William White, the APD detective, was promoted to the rank of sergeant in February 2013 and held that rank at the time of trial. In his brief, the appellant refers to Sergeant White as "Detective White." *See, e.g.,* App. Brief at 10. To avoid confusion, Sergeant White will likewise be referred to in this brief as "Detective White."

DEF: It always... she... she'll yell at me for a while and I'll just sit there and ignore her for a while and eventually I'll stand up and she'll come [*gets up to demonstrate*] and throw some weak right slap, but I would grab it and just turn her around and I would get her in a figure four and she'd finally calm down. [*Sits back down*]

DET WHITE: Okay. Like a figure four... you mean like a....

DEF: No [*Gets backup to demonstrate again*]

DET WHITE: ...around the neck kind of...

DEF: Basically I take her own arm and it's almost poetic in a sense. I'm trying to let her know what's she's doing and you know... that's how it goes.

DET WHITE: Okay.

DEF: [*Starts to sit back down*] A couple of times I had too many beers and just grabbed her by the wrists and threw her on the bed as hard as I could, but I would never hurt her. I just wouldn't do it.

**DET WHITE: Have you ever uh... when you're restraining her from behind... you know given that uh... you got an arm around her neck, has she ever passed out or anything like that?**

**DEF: Umm...once [*chuckles*]. It wasn't last night, though. I've only done that once 'cause she just would not quit. I think she was on coke that day and she just would not quit. So, I choked her out. She passed... I laid her on the bed and she woke up and that's what you do when people... when you choke them out. You lay them down and "do you feel better now?" "Okay." That's... I've only had to do that once.**

DET WHITE: How long was she out at that time that it happened?

DEF: Just a few minutes. Maybe four minutes.

14

State's Exh. 145 (recording); State's Pretrial Exh. 1 (transcript) at 17 (11a RR 28) (emphasis added).[4]

Significant here is the fact that the appellant indicated, during this portion of the first interview, that he strangled the victim to the point of unconsciousness only during an extraneous incident, not during not the incident that resulted in her death. He told Detective White, "It wasn't last night, though. I've only done that once 'cause she just would not quit. I think she was on coke that day and she just would not quit. So, I choked her out." State's Pretrial Exh. 1 at 17.

Later during that same interview, the appellant reiterated that the only time that he "[e]ver actually render[ed] her unconscious was when she was high on coke." *Id.* at 21. The appellant made it clear that the "coke"-related strangulation incident had occurred roughly one year before the victim's death:

> DET WHITE: High on coke... how long ago was that would you guess?

---

[4] Detective White's first interview of the appellant occurred on November 15, 2012, in an interview room at Austin Police Department headquarters. 9 RR 76-77; *see* 8 RR 32. That conversation occurred on the same day that police were dispatched to the victim's home following the report of her death. 8 RR 23-24. A recording of that interview was admitted at trial as State's Exhibit 145. 9 RR 75-76. A transcript of that recording was admitted at a pretrial hearing as State's Pretrial Exhibit 1. 2 RR 23. The transcript was not admitted into evidence during the trial, but copies of it were in the possession of the jurors while the recording of the interview was published to the jury. *See* 9 RR 77-78. For the Court's convenience, citations to the applicable page(s) of transcript will sometimes be used in this brief in lieu of citations to the actual recording. All such citations to the transcript should be considered as citations to the corresponding portions of the actual recording. In his brief, the appellant likewise cites the pretrial transcript when referring to the recording. *See, e.g.,* App. Brief at 10-12.

DEF: That was after close to a year ago, I think.

DET WHITE: So last night did she lose consciousness at all whether it be briefly or for several minutes?

DEF: Uh, nuh nuh. It was just pretty routine, you know. She calmed down.

State's Pretrial Exh. 1 at 21.

During the charge conference, the trial court suggested, quite properly, that evidence of "their history of fighting" did not support the appellant's request for a manslaughter instruction. 9 RR 129. Because the cited comments of the appellant addressed only extraneous incidents, not the events at issue here, the cited evidence was not "evidence directly germane to a lesser-included offense." *Skinner*, 956 S.W.2d 532, 543. Nor did such evidence rebut or negate an element of the greater offense. *Cavazos*, 382 S.W.3d 377, 385. This evidence therefore did not tend to show that the defendant, if guilty, was guilty only of the lesser-included offense. Moreover, this Court should find that the trial court did not abuse its discretion when it implicitly found that this evidence did not support manslaughter as a valid rational alternative to the charged offense of murder. *See Goad*, 354 S.W.3d at 446; *Feldman*, 71 S.W.3d 738, 750.

b. Evidence of "sex with strangulation" did not support the requested instruction

During the charge conference, the trial court specifically asked the defense attorney to direct the court to relevant evidence of what happened on the date in question. 9 RR 129. Defense counsel responded by identifying a portion of the transcript that addressed (in the judge's terminology) "sex with strangulation." 9 RR 129. During the cited portion of the appellant's conversation with Detective White, the appellant indicated that he had restrained the victim for about five seconds that night and, most importantly, that she never lost consciousness that night:

DET WHITE: Okay. Is it... well, the hold you had... I know you said sometimes you use her own arm, sometimes you just use your arm. Last night, was it her arm or was it your arm?

DEF: It was her arm.

**DET WHITE: It was her arm, okay. How long would you guess you did it for?**

**DEF: All of five seconds.**

DET WHITE: About five seconds?

DEF: Mmhmm.

**DET WHITE: And um... never lost consciousness and...**

**DEF: [*Shakes head no*]**

DET WHITE: Okay. So, what was her reaction after you stopped?

17

DEF: Uh... an orgasm. Yeah.

DET WHITE: After you stopped?

DEF: Mmhmm.

DET WHITE: Was this before sex you mean or...

DEF: Before. It's kind of what started it.

State's Exh. 145; State's Pretrial Exh. 1 at 23-24 (emphasis added).

Later in the interview, the appellant reiterated that the restraint that night lasted "all of about five seconds" and that, after that restraint concluded, they "fooled around in bed for a while and just lost clothes real quick and fucked around in bed for a while." *Id.* at 25. Those comments were made by the appellant during the following exchange:

> DET WHITE: Yeah. Yeah, I mean that's certainly uh... a practice were familiar with in here 'cause you know a lot of people uh... there's the... I know we have... the cases where people have sex and like the strangulation because the orgasm feels better and that kind of thing. So, you're not surprising me with any of that. So, yeah, don't worry about talking about any of that stuff with me. Uh...
>
> DEF: That's her too, not me. That's weird, but...
>
> DET WHITE: So, do you do it more for her or...
>
> DEF: More for her. She provokes it anyway. You know, she just won't quit until I at least... [*snaps his fingers*] I don't know what it is 'cause she just likes to see me snap. She'll be real insistent right then, yeah you need to orgasm now... and that's how that goes.

DET WHITE: So, if... if you're doing that, do you have to do anything else to her to get her off or is it just the strangulation that actually gets her off?

DEF: Um... she... The first time she did that was last night to begin with. I thought it was weird, but uh... that's not a typical thing... It's not a typical thing. As a matter of fact I just said the first time she... she's... that's the first time I've actually ever seen her orgasm like that. She tells me that she's a squirter. Weird enough that was the first time I've ever actually seen her orgasm like that. And uh... but sure enough I did that, let her go, and um... **Yeah, it was all about five seconds and she bust a nut in her pants and just let her go and we fooled around in bed for a while and just lost clothes real quick and fucked around in bed for a while** and it's almost always the same motions just missionary, left leg, right leg, it's doggie style, then...and then we're done. It's pretty typical.

DET WHITE: And... and the sex did that all take place in the bed, in the bedroom?

DEF: Mmhmm.

DET WHITE: Okay. And when that was done, did she get up and do anything else or...

DEF: [*Shakes head no*] No, she went to bed. Yeah, she went right to bed.

State's Exh. 145; State's Pretrial Exh. 1 at 25. The appellant made it clear, during that same interview, that the victim "fell asleep after sex" that night. *Id.* at 7. The appellant also stated, during that interview, that the last time he saw the victim alive was when "[he] woke up to her this morning snoring." *Id.* at 6.

When the appellant was interviewed the second time by Detective White, the appellant stated, "I checked her whatever and then we had sex." State's Exh. 146;

19

State's Pretrial Exh. 2 at 5. The appellant also stated that the victim was "drunk but wide awake" when he had sex with her that night. *Id.*

During the charge conference, defense counsel argued, *inter alia*, "I think a rational jury can decide that he choked her to unconsciousness and that caused serious problems for her but she was still breathing afterwards and then died later. I think that that comports with his first statement and with what the medical examiner says." 9 RR 132. The attorney's analysis was obviously flawed. As the trial court correctly observed, "[The appellant] said he choked her then later had sex with her and she was still alive." 9 RR 132. At no point during that first interview did the appellant state, or even imply, that the victim was rendered unconscious when he restrained her for "all of about five seconds" that night. On the contrary, he specifically indicated that she never lost consciousness that night. *See, e.g.,* State's Pretrial Exh. 1 at 23-24. In short, the appellant did not claim, during the cited portion of that first interview, that he recklessly caused her death. Instead, his claim, at that time, was that he did not cause her death at all.

Even when viewed in conjunction with the testimony of Deputy Medical Examiner Dr. Leisha Wood, the version of events given by the appellant during his first police interview did not support defense counsel's request for a charge on the offense of manslaughter. This evidence, if presumed to be credible, simply does not support a rational inference that the appellant recklessly caused the victim to

20

die.  Dr. Wood did testify that the victim "could have been <u>choked to unconsciousness</u> but then been alive and due to her high blood alcohol died later." 8 RR 192-93 (emphasis added).  However, the scenario addressed by Dr. Wood was clearly one in which the victim was "choked to unconsciousness." *Id*.  The appellant's version of events did not fall within the scope of that scenario, because the appellant indicated that his restraint of the victim that night did not result in a loss of consciousness.  *See, e.g.,* State's Pretrial Exh. 1 at 23-24.

Moreover, the evidence identified by the appellant's trial attorney does not support a rational inference that the restraint somehow caused the still-conscious victim to die at a later point in time.  Dr. Wood testified that the victim's death was caused by strangulation.  8 RR 183, 189.  More specifically, Dr. Wood made it clear that "her death was caused by the blood being cut off to her brain, not due to her airway being closed."  8 RR 193-94.  Wood also indicated that the injuries to the victim's neck, particularly the fractures of her thyroid cartilage, would not have been fatal in and of themselves.  *See* 8 RR 190.  The record does not reflect any evidence that the still-conscious victim sustained, during the restraint, an injury that **only later** caused her carotid arteries to be "occluded with consistent pressure" (8 RR 183) and prevented blood from reaching her brain.  If presumed to be true, the appellant's version of events failed to establish any causal connection between the appellant's conduct and the victim's demise.   Without proof of causation, the

21

evidence cited by defense counsel would not have been sufficient to establish that the appellant committed any offense at all. *See* Tex. Penal Code § 6.04(a). Thus, the evidence of "sex with strangulation" is not "evidence directly germane to a lesser-included offense." *Skinner*, 956 S.W.2d 532, 543.

This Court should therefore conclude that the trial court did not abuse its discretion when it implicitly found that the evidence cited by defense counsel did not support manslaughter as a valid, rational alternative to the charged offense of murder. *See Goad*, 354 S.W.3d at 446; *Feldman*, 71 S.W.3d 738, 750; *see, e.g.*, 9 RR 131 (where trial judge stated, "You can't be dead and alive at the same time.").

Such a conclusion is also supported by the fact that the appellant's self-serving "sex with strangulation" scenario is refuted by a great deal of other evidence, including the appellant's own statements, during his third police interview, indicating that he intentionally killed the victim. *See, e.g.,* State's Exh. 149 at 31:55; State's Pretrial Exh. 3 at 15 (where the appellant told Detective White, "I think, ahhh... That's what it was. I slapped her and freaked out thinking she was gonna call the cops and killed her. That's what it was…."); State's Exh. 149 at 32:52; State's Pretrial Exh. 3 at 15 (where the appellant told the detective, "That had to have been it. She mentioned my father, I slapped her, freaked out thinking I thought I was gonna lose it, go to jail, lose my job, be out back on the streets again for winter, so I just killed her."). Indeed, the appellant's "sex with

22

strangulation" scenario was not supported by *any* other evidence at trial. *See*

*Mathis v. State*, 67 S.W.3d 918, 926 (Tex. Crim. App. 2002) ("Apart from

appellant's own testimony that he did not intend to kill anyone, there was no other

evidence in support of such theory, and in fact the evidence refuted that testimony.

We hold appellant's testimony does not supply evidence upon which a jury could

rationally find appellant's actions toward Hibbard were merely reckless and were

not at least knowing.").

Simply put, the cited evidence of a "sex with strangulation" scenario did not

support the request for a manslaughter instruction.

c. The other evidence cited in the appellant's brief did not support the requested instruction

In his brief, the appellant quotes statements made during Detective White's

second and third interviews of the appellant. App. Brief at 12-15. That evidence

was not brought to the trial court's attention during the charge conference, even

though the court specifically asked the defense attorney to direct the court to

relevant evidence of what happened on the date in question. 9 RR 129. The trial

court therefore cannot reasonably be faulted for failing to expressly consider that

evidence. To the extent that the appellant's appellate claim is predicated upon the

second and third interviews, his claim has not been preserved for review due to

trial counsel's failure to refer to those interviews. *See* Tex. R. App. P.

23

33.1(a)(1)(A). Stated differently, the appellant's appellate claim regarding the significance of statements made during the second and third interviews does not comport with the request and arguments presented by defense counsel at trial.

Moreover, the comments made by the detective during the three interviews cannot reasonably be considered to be evidence that the appellant recklessly caused the death of the victim. Those comments, made by a person who had no personal knowledge of the events that led to the victim's death, were obviously uttered for the purpose of eliciting information from the appellant. Those comments, at their essence, were in the nature of theories or suggestions or leading questions, not assertions of pertinent facts known by the detective. And nearly all of those comments merely voiced vague propositions about people in general. For example, the appellant quotes the detective's statement that "people sometimes let things go a little farther that they meant to." App. Brief at 13 (emphasis added). To the extent that the cited comments fail to provide information pertaining to the death of the victim in this case, those comments clearly do not support the request for a manslaughter instruction.

In his brief, the appellant emphasizes three comments made by the detective. A review of those remarks reveals a major flaw in the appellant's reliance upon any comments made by the detective. In one of those comments, the detective stated, "Like I talked to you before, whether or not you intended to kill her, I can

24

see that you probably did not." App. Brief at 13. In another comment emphasized by the appellant, the detective stated, "I think it was a situation that got, that went beyond what you meant it to." App. Brief at 14-15. In the third such comment, the detective stated, "Now, what you what you were saying as far as, you know, I can see it being manslaughter versus murder. That is something you can discuss, you know, that's something you can talk to the prosecutors about, with your attorney about." App. Brief at 15.

At most, these comments are merely assertions of the detective's *opinions* about the appellant's version of the facts; those comments were not themselves assertions of relevant fact. While the two-part test might impose a presumption that an assertion of fact is credible, and even a presumption that a statement of opinion is truly the opinion held by the speaker, there can be no presumption that an *opinion* about the pertinent facts is correct. Even if it is assumed that Detective White truly held those opinions, the existence of those opinions did not in any way preclude a jury determination that the appellant intentionally or knowingly caused the victim's death. Simply put, the detective's opinions did not "rebut[] or negate[] an element of the greater offense." *Cavazos*, 382 S.W.3d 377, 385. In light of the other evidence presented at trial, including the appellant's own inculpatory statements, the Court should conclude that comments made by the detective during the three interviews did not support manslaughter as a valid, rational alternative to

the charged offense of murder. *See Goad*, 354 S.W.3d at 446; *Feldman*, 71 S.W.3d 738, 750.

5. Conclusion

Because the second prong of the two-part test was not satisfied, this Court should find that the trial court did not abuse its discretion when it denied the request by defense counsel that the offense of manslaughter be submitted to the jury. The first point of error should be overruled.

## THE STATE'S REPLY TO THE SECOND POINT OF ERROR

THE APPELLANT'S CLAIM CHALLENGING THE ADMISSION OF DETECTIVE WHITE'S OPINION TESTIMONY HAS NOT BEEN PRESERVED FOR REVIEW.

### Argument and Authorities

In his second point of error, the appellant asserts, "The trial court abused its discretion in permitting the lead detective in this case to give his opinion that Appellant committed murder when he had no personal knowledge upon which to base his opinion." App. Brief at 17. Specifically, the appellant contends that the trial court erred by permitting Detective White to provide the following testimony:

> Q. So based on what you had at the time, why did you charge the defendant with murder?
> A. The law says that murder is intentionally or knowingly. Based on the totality of the circumstances, the evidence we had at the time, the investigation, what forensics we did have, including the medical examination, and ultimately the defendant's own statements, I felt that his conduct was not only knowing but intentionally done.

9 RR 114; *see* App. Brief at 20.[5]

This point of error should be overruled, however, because the appellant's claim has not been preserved for appellate review. Preservation of error is a systemic requirement on appeal; a reviewing court should not address the merits of a claim that has not been preserved for appellate review. *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013).

1. The cited objection was untimely

To present a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion." Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Rule 33.1(a) applies to appellate claims challenging the admission of lay-witness opinion testimony. *See, e.g., Burks v. State*, No. 05-13-00852-CR, 2014 Tex. App. LEXIS 11369 at *13 (Tex. App.—Dallas Oct. 14, 2014) (not designated for publication) ("Burks did not object at trial that Humble gave an improper lay opinion on his future dangerousness. Accordingly, Burks forfeited his complaint on appeal by not properly preserving error at trial."). That rule likewise applies to appellate complaints over the admission of expert testimony. *See Salazar v. State*, 127 S.W.3d 355, 362 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

---

[5] The appellant characterizes the challenged testimony as "that of a lay witness." App. Brief at 20 (citing Tex. R. Evid. 701). It assumed herein, for the sake of argument, that this characterization is correct.

In this case, the appellant has not identified, and the record does not reflect, a contemporaneous objection to the challenged testimony. In his brief, the appellant makes reference to an objection that was made earlier during the trial. That objection appears below:

> Q. (BY MS. DEFORD) Now, Detective, also on Page 6 of the transcript the defendant describes that -- describes Kirstin's death as an odd occurrence. Is there anything in the evidence that you collected at the scene or that you learned during the course of the investigation to indicate this is some type of odd occurrence?
> **MR. BROWNING: Your Honor, I object to that. That calls for wild speculation on his part. I don't even know what the phrase means.**
> THE COURT: The question is, if there is anything the detective saw that makes him believe this is an odd occurrence?
> MS. DEFORD: Right, that there was an odd occurrence.
> THE COURT: You may answer that.
> A. Based on the totality of the circumstances and the investigation at that point, I don't think there was anything odd about it. I think it was a straightforward murder.

9 RR 111 (emphasis added); *see* App. Brief at 19-20.

This objection was insufficient to preserve the instant claim for appellate review because that objection was not timely made in relation to the testimony at issue here. After that objection was overruled and the witness answered the question, several additional questions were asked and answered. Those questions and answers addressed a variety of topics unrelated to the objected-to testimony. For example, Detective White testified about the following matters: the timing of the appellant's visit to the Valero gas station, the detective's interview of the

28

victim's former boyfriend, the detective's interview of roommate Michael Orf, the detective's submission of physical evidence for laboratory testing, his review of the 911 recording, and his verification that roommate Nora Holland was in a mental facility at the time of the murder. *See* 9 RR 111-14. It was only after all of that additional testimony—with no further objection—that Detective White provided the testimony that is challenged in this point of error. Thus, the objection cited by the appellant was untimely.[6]

2. The appellate claim does not comport with the trial objection

Even if it is assumed, for the sake of argument, that the objection cited by the appellant was timely, there is a second reason why that objection was insufficient to preserve the appellant's claim: the claim on appeal does not comport with the objection asserted at trial. It is well settled that an objection stating one legal basis may not be used to support a different legal theory on appeal. Thus, if the complaint on appeal does not comport with the trial objection, nothing is

---

[6] Texas courts recognize only two exceptions to the contemporaneous objection rule. *See Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991); *Scaggs v. State*, 18 S.W.3d 277, 292 (Tex. App.—Austin 2000, pet. ref'd). One exception is the running objection. The other exception is specified in Texas Rule of Evidence 103(a)(1), which provides, "When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." Tex. R. Evid. 103(a)(1). In this case, the record does not reflect a running objection to the challenged testimony. Nor does it reflect any pertinent objection outside the presence of the jury.

preserved for review.  *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Urtado v. State*, 333 S.W.3d 418, 426 (Tex. App.—Austin 2011, pet. ref'd).

When defense counsel objected at trial (in response to a question about "some type of odd occurrence"), he stated, "Your Honor, I object to that.  That calls for wild speculation on his part. I don't even know what the phrase means."  9 RR 111.  In contrast, the appellant's claim on appeal is that "[t]he trial court abused its discretion in permitting the lead detective in this case to give his opinion that Appellant committed murder when he had no personal knowledge upon which to base his opinion."  App. Brief at 17.  This appellate claim, challenging the witness's opinion testimony, simply does not comport with the appellant's trial objection that the question was vague and called for speculation.

### 3. Conclusion

Because the trial objection cited by the appellant was untimely and asserted a different basis than the claim presented on appeal, that claim has not been preserved for appellate review.  This point of error should therefore be overruled. *See Sandoval*, 409 S.W.3d 259, 287.

## THE STATE'S REPLY TO THE THIRD POINT OF ERROR

THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT THE APPELLANT'S MURDER CONVICTION.

### Argument and Authorities

In his third point of error, the appellant claims that the evidence is legally insufficient to establish that he committed the offense of murder. *See* App. Brief at 23. This point of error lacks merit and should be overruled.

1. Standard governing legal-sufficiency review

When assessing the legal sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

It is well settled that the jury is the exclusive judge of the facts proved, the weight to be given to the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. art. 38.04; *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim.

---

[7] For purposes of a sufficiency analysis, the elements of an offense are defined by reference to a hypothetically correct jury charge. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." 953 S.W.2d at 240.

App. 1995). The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Accordingly, the *Jackson* standard requires the appellate court to defer to the jury's factual determinations and thereby "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. 307, 319. "Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or reweigh the evidence. *Id.*

In short, the task of the appellate court during a sufficiency review is merely to "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Direct evidence and circumstantial evidence are to be treated equally, and the evidence to be reviewed even includes evidence that was improperly admitted. *Clayton*, 235 S.W.3d 772, 778; *see Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008). "The legal sufficiency standard requires the reviewing court to look only at

the evidence supporting the verdict and to presume that any conflicts in the evidence were resolved in favor of the prosecution." *Sanders v. State*, 119 S.W.3d 818, 822 (Tex. Crim. App. 2003) [v. State; *see Jackson*, 443 U.S. at 326.

The jury's verdict must stand unless the reviewing court finds it to be irrational or unsupported by more than a "mere modicum" of evidence, with such evidence being viewed in the light of *Jackson*. *Moreno*, 755 S.W.2d 866, 867.

2. The evidence is legally sufficient to support the verdict

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." Tex. Penal Code § 19.02(b)(1). In this point of error, the appellant does not challenge the jury's conclusion that he caused the victim's death. Instead, he claims only that the evidence is insufficient to establish that he acted with the requisite *mens rea*. He argues, *inter alia*, as follows:

> The only "evidence" that Appellant caused Anderson's death intentionally or knowingly came from Detective White who gave his opinion, unsupported by any personal knowledge, that Appellant acted intentionally or knowingly. As discussed above, this "evidence" should have been excluded at trial and should not be considered on appeal. *See* [*Fairow v. State*, 943 S.W.2d 895, 900 (Tex. Crim. App. 1997)]. Without Detective White's testimony, the State failed to show Appellant intentionally or knowingly caused Anderson's death, and any speculation to that effect is not supported by the record.

App. Brief at 23 (footnote omitted).[8]

---

[8] After making this statement in his brief, the appellant asserts, "In fact, the record evidence shows that when Appellant returned home from work on November 15, 2012, he called

33

Viewing all of the evidence in the light most favorable to the verdict, this Court should conclude, based on that evidence and the reasonable inferences therefrom, that a rational juror could have found, beyond a reasonable doubt, that the appellant intentionally or knowingly caused the victim's death.

a. <u>The verdict is supported by Det. White's testimony about his belief that the appellant intentionally and knowingly caused the death</u>

As the appellant acknowledges in his brief, the jury did receive testimony from Detective White that the appellant acted with both knowledge and intent. *See* App. Brief at 23. Specifically, the record reflects the following testimony from that detective:

> Q. So based on what you had at the time, why did you charge the defendant with murder?
> A. The law says that murder is intentionally or knowingly. Based on the totality of the circumstances, the evidence we had at the time, the investigation, what forensics we did have, including the medical examination, and ultimately the defendant's own statements, **I felt that his conduct was not only knowing but intentionally done**.

---

911 and performed CPR on Anderson until EMS arrived." App. Brief at 23. This evidence pertaining to the appellant's 911 call must not be considered in a vacuum. Deputy Medical Examiner Dr. Wood testified that the victim's physical condition was consistent with the victim having died at least twelve hours before police discovered her at 5:00 p.m., on November 15, and as early as the night of November 14. 8 RR 177. According to the appellant's supervisor, the appellant was forced to leave work prematurely on November 15 because the appellant was "just kind of catatonic" and "was just staring at his computer screen." 8 RR 135. After leaving work, the appellant reportedly spent hours riding around town on a bus. See State's Pretrial Exh. 1 at 8 ("And, I just hopped on the number 3 bus and just rode all around just kind of calm down…"); id. at 9 ("I must have ridden the bus forever"). Viewed in the light most favorable to the verdict, the evidence rationally supports an inference that, before he returned home from work that day, the appellant was already aware of the victim's death.

9 RR 114 (emphasis added).

This evidence must be considered by the Court during its sufficiency analysis, despite the fact that the appellant (in his second point of error) challenges the admission of this evidence. As this Court has previously recognized, even "wrongly admitted" evidence must be considered by an appellate court when assessing the legal sufficiency of evidence:

> In assaying all the evidence under the *Jackson* standard of review, an appellate court must consider all evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider.

*Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008), citing, *inter alia*, *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). *See Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd). Thus, Detective White's testimony regarding the appellant's mental state must be considered during this Court's sufficiency analysis, even though the appellant challenges the admission of that testimony in another point of error. The resolution of that other point of error will have no bearing on this sufficiency analysis.

b. The appellant's admissions support an inference that he intentionally or knowingly caused the victim's death

The jury's determination that the appellant intentionally or knowingly caused the victim's death is also supported by several statements made by the appellant during his third interview by Detective White. During that conversation, the appellant admitted that he slapped the victim and then killed her because he thought she was going to call the police:

> DET WHITE: Well I appreciate your honesty. I was actually gonna, I didn't wanna put words in your mouth by approaching that subject, but uhh... you know. I was asked by the doctor about that because they said the injuries are actually a little bit more consistent with someone coming straight on with her. But I didn't wanna put any words in your mouth and get you confused, but uhh... You know. It certainly makes sense. And I appreciate you being honest. And it would certainly fit if this doesn't come back as blood. Do you remem... Do you recall having any other kind of fit, cause like I said, we saw some other injuries on her. Do you recall... getting physical as far as any swings being taken or anything like that?
>
> DEF: I think maybe, uhh... Maybe I probably slapped her.
>
> DET WHITE: OK.
>
> DEF: **I think, ahhh... That's what it was. I slapped her and freaked out thinking she was gonna call the cops and killed her. That's what it was. Shit. Fuck. Oh my God.**
>
> DET WHITE: Well I appreciate your honesty. What was it you think she did that made you mad?
>
> DEF: She just wouldn't shut up. She just mentioned my father's temper. And it's almost like her voice was a magic power that pulled it out of me. And my father is not a reasonable guy. I think probably that's what really did it. Cause, I mean, I typically... some nights just

36

never talk about my father. And she wants, you know, so she wants to drill that out and... I am half the man, so uhh... When she mentioned that I lost control. Like my father did when he was raising me, I just lost control.

DET WHITE: Mmhmm.

DEF: **That had to have been it. She mentioned my father, I slapped her, freaked out thinking I thought I was gonna lose it, go to jail, lose my job, be out back on the streets again for winter, so I just killed her.**

DET WHITE: Mmhmm. Did, uhh... Did you slap her across the face, or do you remember where?

DEF: **I didn't even expect her to have a bloody lip. I think I just slapped her and I just saw blood there. I saw red and it was over.**

State's Exh. 149 at 31:11 – 33:19; State's Pretrial Exh. 3 at 15 (emphasis added).

*See also* State's Exh. 149 at 29:00 (where the appellant tells Det. White, "I agree, I saw red, killed her. Oops.").

The appellant contends that the statements that he made to Detective White during the third interview were "speculation and 'for the sake of this interrogation.'" App. Brief at 23 n3, quoting State's Pretrial Exh. 3 at 10. However, the standard governing this sufficiency review requires that all evidence be viewed in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319. When considered in that light, the appellant's admissions support an inference that he intentionally or knowingly caused the victim's death.

c. Evidence that the appellant strangled the victim's limp body supports an inference that he intentionally or knowingly caused her death

The following testimony of Deputy Medical Examiner Dr. Leisha Wood provides further support for the conclusion that the appellant intentionally or knowingly caused the victim's death:

> Q. (BY MS. MCNELIS) What happens to a person's body when they lose consciousness when they are being strangled?
> A. The body basically goes limp and a person would appear to be asleep.
> Q. And then to go on to -- for that perpetrator to then go on to kill them by manual strangulation, they would be sustaining that pressure around the carotid arteries while that person is limp for another maybe minute 45 seconds?
> A. Correct.

8 RR 186.

When viewed in the requisite light, this testimony by Dr. Wood supports a rational inference that, after the appellant strangled the victim to the point of unconsciousness, he then continued to strangle her—after her body became limp— "for another maybe minute [and] 45 seconds." A factfinder could rationally have inferred from such conduct that the appellant was, at the very least, "aware that his conduct [was] reasonably certain to cause the result," i.e., her death. Tex. Penal Code § 6.03(b) (defining "knowingly"); *see also id.*, § 6.03(a) ("A person acts intentionally …when it is his conscious objective or desire to … cause the result").

After all, the record reflects that the appellant was knowledgeable about strangulation and even proficient in strangling people. During the third interview, he made the following statements to Detective White:

> DEF: So I have a thought of, I'm not gonna lie to you, I have thought of just reaching out and just shutting her up.
>
> DET WHITE: Mmhmm.
>
> DEF: So, I would imagine that's what happened. I mean because, **I've done martial arts and everything, you know. I'm pretty well trained, I have pretty good control** and if I were to choke somebody out, you know, I could go to sleep. I would get back up. I'd go have a beer. But, umm... If I were to really did wanna kill her... I would have just reached out and grabbed her and torn her throat out.

State's Pretrial Exh. 3 at 14-15 (emphasis added).

The appellant also demonstrated a familiarity with certain strangulation techniques, i.e., the "figure four" (State's Pretrial Exh. 1 at 17) and the "straight choke" (State's Pretrial Exh. 3 at 14). Describing the manner in which he typically restrained the victim, the appellant told the detective that "it's almost poetic in a sense." State's Pretrial Exh. 1 at 17. When telling Detective White about the earlier occasion when he strangled the victim to the point of unconsciousness, the appellant made statements that even reflected a knowledge of the steps that should be taken *after* a person has been "choked out":

> I laid her on the bed and she woke up and **that's what you do** when people... when you choke them out. You lay them down and "do you feel better now?" "Okay."

39

State's Pretrial Exh. 1 at 17 (emphasis added).

It is significant here that the appellant had previously strangled the victim to the point of unconsciousness. On the night of her death, the appellant proceeded well beyond that point. In light of the appellant's professed knowledge of strangulation techniques and his past experience strangling this particular victim, a factfinder could rationally have inferred that, on the night of her death, the appellant was aware that the victim was limp and unconscious and that he nevertheless continued strangling her, causing her carotid arteries to be "occluded with consistent pressure" (8 RR 183) "for another maybe minute [and] 45 seconds" (8 RR 186). Viewed in the light most favorable to the guilty verdict, this evidence rationally supports an inference that the appellant intentionally or knowingly caused her death.

d. Evidence favoring the appellant must be disregarded

The record contains some evidence favorable to the appellant. During the police interviews, for example, the appellant made certain comments suggesting that he did *not* intentionally or knowingly cause the victim's death.[9] Importantly,

---

[9] During the first interview, for instance, the appellant initially suggested that he played no role in the victim's death and that she died of natural causes. *See, e.g.*, State's Pretrial Exh. 1 at 3 ("It's actually bewildering to me. And so when I saw her dead today that's what I thought. I thought she had finally croaked."); *see also id.* at 32.

During that interview, the appellant eventually indicated that he had briefly applied a chokehold to the victim, in an act of self-defense. The appellant insisted that she never lost

all such evidence was implicitly rejected by the jury when it found the appellant

guilty, and all such evidence must be disregarded during this sufficiency review.

"The legal sufficiency standard requires the reviewing court to look only at the

evidence supporting the verdict and to presume that any conflicts in the evidence

were resolved in favor of the prosecution." *Sanders v. State*, 119 S.W.3d 818, 822

(Tex. Crim. App. 2003); *see Jackson v. Virginia*, 443 U.S. at 326.

     e.  <u>The victim's injuries suggest that she was strangled during the course of a broader assault on her</u>

The determination by Dr. Wood of the cause and manner of death were

based in large part upon her findings as to the victim's physical injuries. *See, e.g.*,

8 RR 177-83 (addressing petechia and injuries to the victim's neck). Significantly,

the autopsy also revealed that the victim suffered a number of nonfatal injuries.

From those nonfatal injuries, a factfinder could rationally have inferred that the

---

consciousness and that he and the victim thereafter engaged in sexual activity, after which she went to bed and fell asleep. *Id.* at 7, 25. The appellant claimed that he heard her snoring the following morning before he went to work. *Id.* at 6. He conceded that "it is possible" that he had his arm around her neck during the course of "wrestling with her and us having sex." *Id.* at 31. Despite these concessions, the appellant continued to assert that the victim "died of natural causes." *Id.* at 30. He added, "Maybe... maybe she was well on her way to death and just fucked me as one last thing go before she died. I don't know. Because, she's also been talking to me about death more and more lately. She's convinced she had cancer and other issues here [*pointing to the left side of the abdomen*]." State's Pretrial Exh. 1 at 32-33.

     During the second interview, the appellant told the detective that the victim was "drunk but wide awake" (State's Pretrial Exh. 2 at 5) during their post-strangulation sex and that "I just sincerely, I just sincerely have no idea how this happened" (*id.* at 4).

     During the third interview, the appellant stated, at one point, that he "didn't intentionally kill her." State's Pretrial Exh. 3 at 10. Still attempting to minimize his culpability, the appellant indicated that he applied the chokehold because "she did have an asphyxiation fetish" and that "maybe it did get out of hand." *Id.* at 10.

strangulation occurred during the course of a broader attack upon the victim, not during an otherwise-peaceable situation in which the appellant merely attempted to satisfy the victim's "asphyxiation fetish." State's Pretrial Exh. 3 at 10. For example, the jury received evidence that the victim sustained an abrasion near her left eye. That the abrasion was caused by trauma. 8 RR 168. Other injuries included a bruise on the top of her head, injuries to her lips and tongue, and "a blunt trauma injury to her right temple area." 8 RR 169-70; *see id*. at 151. Considered in the light most favorable to the verdict, this evidence supports an inference that these nonfatal injuries were inflicted independent of the strangulation and that the appellant acted with animus toward the victim during the incident.

3. Conclusion

Viewing the evidence in the requisite light, this Court should find that the evidence is legally sufficient to support the verdict. The third point of error should be overruled.

**THE STATE'S REPLY TO THE FOURTH POINT OF ERROR**

THIS COURT SHOULD REJECT THE APPELLANT'S CLAIM THAT THE PROSECUTOR MADE IMPROPER STATEMENTS DURING THE STATE'S FINAL CLOSING ARGUMENT.

Argument and Authorities

In his fourth point of error, the appellant asserts, "The prosecutor unfairly exceeded the proper areas of jury argument during closing statements which resulted in a substantial violation of Appellant's rights, including the right to a fair trial." App. Brief at 24. That point should be overruled.

1. Law governing jury argument

A jury argument is proper if it is one or more of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Berry v.* State, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). When examining challenges to jury argument, a court is required to consider the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). "Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. Conversely, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to

43

constitute reversible error." *Id.* (citations omitted).

2. Standard governing appellate review

"We review a trial court's ruling on an objection to a jury argument under an abuse of discretion standard." *Lemon v.* State, 298 S.W.3d 705, 707 (Tex. App.–San Antonio 2009, pet. ref'd.); *see York v. State*, 258 S.W.3d 712, 717 (Tex. App.–Waco 2008, pet. ref'd).

3. Because the appellant fails to challenge any ruling of the trial court, nothing is presented for appellate review

"To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see Ladd v. State*, 3 S.W.3d 547, 569 (Tex. Crim. App. 1999); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Tex. R. App. P. 33.1(a). Consequently, when a defendant presents such a claim on appeal, the defendant must show, not only that the prosecutor's argument was improper, but also that the trial court erred when ruling against the defendant's objection or motion. *See, e.g.*, *Miles v. State*, 312 S.W.3d 909, 910 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("appellant contends the trial court erred by failing to sustain appellant's objection to an improper closing argument by the State"); *Lemon v.* State, 298 S.W.3d 705, 707 (Tex. App. – San Antonio 2009, pet. ref'd.)

44

("We review a <u>trial court's ruling</u> on an objection to a jury argument under an abuse of discretion standard").

In the instant case, the appellant complains on appeal that the prosecutor's argument was improper but does not expressly claim that any *ruling* of the trial court was erroneous. *See, e.g.,* App. Brief at 30 ("The prosecutor's arguments were outside the bounds of proper jury argument and undoubtedly injected new facts, harmful to Appellant, into the trial.)." Specifically, he makes no claim that the trial court erred by overruling his objections or by otherwise ruling against him.[10] Because the appellant's fourth point of error fails to challenge any ruling of the trial court, nothing is presented here for review.

4. <u>The trial court did not abuse its discretion</u>

The appellant's brief quotes multiple portions of the State's final closing argument. The quoted excerpts reflect no fewer than six separate objections by defense counsel as well as a motion for mistrial.[11] *See* App. Brief at 25-30. Without waiving the arguments set forth above, the State's brief will respond to the

---

[10] This Court should reject the notion that the fourth point of error *implicitly* challenges the ruling(s) of the trial court, because any such challenge is inadequately briefed. *See* TEX. R. APP. P. 38.1; *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) ("Because appellant does not provide any argument or authority in support of this contention, it is inadequately briefed"); *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000).

[11] This point of error is multifarious to the extent that it combines, into a single claim, challenges to multiple rulings of the trial court. In general, a multifarious point of error should be overruled. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010), citing Tex. R. App. P. 38.1.

45

fourth point of error *as if* the appellant were in fact challenging the rulings of the

trial court that were adverse to the appellant. An examination of the record reveals

no abuse of discretion.

a. The prosecutor's argument that victim decided to take action

In his brief, the appellant quotes, among others, the following portion of the

State's final closing argument:

> MS. DEFORD: Ladies and gentlemen, I want you to come with me to
> that -- to Kirstin's home, to that address at Little John where she lived.
> I want you to come with me to that night of November 14th and I
> want us to walk into her bedroom and see what is going on there. And
> I want you to see as the defendant strikes her and as she decides on
> that night she has had enough, she's going to kick him out --
> **MR. BROWNING: Your Honor, she is arguing facts that have not
> been entered into evidence.**
> MS. DEFORD: Your Honor, it is a deduction from the evidence based
> on the defendant's statements.
> **THE COURT: Objection overruled.**
> MS. DEFORD: So she decides -- she has decided she's had enough,
> she's not going take it anymore, she is going to call the police. That's
> what caused all of this to happen, she was finally going to take some
> action.
> **MR. BROWNING: Your Honor, I renew my objection. This is not
> a deduction from the evidence. This is pure hypothetical being
> offered by the State, not based on any evidence that's been
> admitted.**
> **THE COURT: Objection overruled.**

10 RR 23-24 (emphasis added).

The trial court did not abuse its discretion when it overruled the objections

reflected above because the challenged arguments were, as the prosecutor correctly

46

pointed out, reasonable deductions from the evidence. *See Brown*, 270 S.W.3d 564, 570; *Berry*, 233 S.W.3d 847, 859. In his brief, the appellant claims, "There was never any testimony that Anderson was going to call the police or what her mental state was prior to her death." App. Brief at 30. However, the appellate record does contain evidence that supports the inferences asserted by the prosecutor. During his third interview, the appellant told Detective White, "I think, ahhh... That's what it was. I slapped her and freaked out <u>thinking she was gonna call the cops</u> and killed her. That's what it was...." State's Pretrial Exh. 3 at 15. Moments later, the appellant told the detective, "That had to have been it. She mentioned my father, I slapped her, freaked out <u>thinking I thought I was gonna lose it</u>, <u>go to jail</u>, lose my job, be out back on the streets again for winter, so I just killed her." *Id*. at 15. The trial court could reasonably have concluded that the challenged arguments of the prosecutor were reasonable deductions from the evidence.

b. <u>The prosecutor's arguments concerning the passage of time and the prosecutor's argument directed toward nurses on the jury</u>

In his brief, the appellant also quotes the following portion of the State's final closing argument:

MS. DEFORD:
\*\*\*
     I want you to indulge me for a few seconds. I'm going to start this stopwatch that I have here and when I start it I want all of us to

hold our breath, and when I stop it, for as long as you can or until I say stop because I want to show you how long this takes to kill someone, why it is intentional.

**MR. BROWNING: Your Honor, I object to this as well. This is outside the scope of the evidence that was presented.**

**THE COURT: Objection overruled.**

MS. DEFORD: If we could start.

If we could stop. That's only 14 seconds. Kirstin is still not dead. He's continuing to choke her to unconsciousness. She is still not dead and we're at 30 seconds. Imagine how long it took. Think about that damage to her cartilage, he fractured it, the pressure that is required. 40 seconds, we're still not there. She's still not dead.

Can you imagine the fear? Can you imagine what she's feeling? She can't breathe. That gentleman who was on the jury told us when his wife has those attacks, when she can't breathe --

**MR. BROWNING: Your Honor, I object that that is not evidence that was offered in trial.**

MS. DEFORD: -- the moment has to pass before she can breathe.

**THE COURT: Again, the ladies and gentlemen of the jury will recall the evidence as they heard it.**

MS. DEFORD: Those of you that are nurses, that work -- that are on the jury that work with patients that have problems with their airway --

**MR. BROWNING: That's improper jury argument, Your Honor.**

MS. DEFORD: -- use your experience.

**MR. BROWNING: I object, Your Honor. She cannot appeal directly to the individual jurors in that manner. I object that that is improper jury argument.**

MS. DEFORD: Use your personal experience. Think about that.

**MR. BROWNING: Your Honor, could I get a ruling on my objection?**

**THE COURT: I'm reading what she said. The objection regarding the nurses is sustained. The jury will disregard that remark.**

**MR. BROWNING: Your Honor, I ask for them to strike that and I move for a mistrial.**

**THE COURT: Motion denied.**

MS. DEFORD: Think about that. All this time about the airway that we've been talking and Kirstin is still not dead. We're only at a minute and 54 seconds.

10 RR 25-27.

### i. The first objection

The trial court did not abuse its discretion when it overruled the first objection asserted by defense counsel in the excerpt above. When the prosecutor attempted to show the jury "how long this takes to kill someone," the defense attorney objected that '[t]his is outside the scope of the evidence that was presented." 10 RR 26. Contrary to the defense attorney's assertion, the record does reflect testimony addressing the length of time required to kill a person by manual strangulation. Dr. Wood, the deputy medical examiner, testified that "[i]f that pressure is sustained and the arteries are completely blocked, brain death can occur within two minutes." 8 RR 184; *see also* 8 RR 184-85 (where Dr. Wood agreed that, after the person being strangled passes out, "[i]t takes another minute 45 maybe of blocking those arteries after that person has passed out to kill them"); 8 RR 186 (where Dr. Wood agreed that, "for that perpetrator to then go on to kill them by manual strangulation, they would be sustaining that pressure around the carotid arteries while that person is limp for another maybe minute 45 seconds").

49

The trial court could reasonably have concluded that the challenged argument was a reasonable deduction from this testimony of Dr. Wood.[12]

## ii. The second objection

Nor did the trial court err in relation to the second objection that appears in the exchange quoted above. After the trial court overruled the appellant's first objection (i.e., the objection to the prosecutor's argument concerning "how long this takes to kill someone"), the prosecutor, using a stopwatch, did make certain assertions about how long it took the victim to die. *See, e.g.*, 10 RR 26 ("That's only 14 seconds. Kirstin is still not dead. He's continuing to choke her to unconsciousness. She is still not dead and we're at 30 seconds. Imagine how long it took."). However, defense counsel did not assert a timely objection to that argument. The defense attorney did object after the prosecutor began addressing a different topic, i.e., comments that had apparently been during made *voir dire* by

---

[12] On appeal, the appellant contends that "there was no evidence as to how long Anderson was deprived of air, in stark contrast to the prosecutor's assertion, complete with a stopwatch." App. Brief at 30. To the extent that the fourth point of error is predicated upon this contention, this point of error must fail because the appellant's contention does not comport with the objection asserted at trial. At trial, the defense attorney objected to the prosecutor's argument as to "how long this takes to kill *someone*." 10 RR 26 (emphasis added). In contrast, the appellant's claim on appeal is that there was no evidence of how long it took to kill *the victim. See Urtado*, 333 S.W.3d 418, 426 (if the complaint on appeal does not comport with the trial objection, nothing is preserved for review). Even if it is assumed, *arguendo*, that the appellant's contention was preserved for appellate review, this Court should reject that contention for the simple reason that Dr. Wood's testimony was circumstantial evidence of how long it took to kill the victim by strangulation. Finally, to the extent that the appellant's contention is predicated upon the notion that the victim was "deprived of air," that contention is, at best, imprecise and, at worst, unfounded. Dr. Wood testified that "[the victim's] death was caused by the blood being cut off to her brain, not due to her airway being closed." 8 RR 193-94.

50

"[t]hat gentleman who was on the jury" regarding his wife's breathing difficulties. 10 RR 26; *see* 6 RR 69-71 (*voir dire* examination of venireperson Williamson). Counsel objected on the ground that "that is not evidence that was offered in trial." 10 RR 26.

Here, the trial court could reasonably have concluded that the second objection related only to the prosecutor's argument about "[t]hat gentleman who was on the jury" regarding his wife's breathing difficulties. Even if it is assumed, *arguendo*, that the defense attorney's objection addressed the prosecutor's argument concerning how long it took the victim to die, the trial court could reasonably have concluded that the challenged argument was a reasonable deduction from Dr. Wood's testimony.

In any event, the trial court did not rule on the objection. Instead, the court responded, "Again, the ladies and gentlemen of the jury will recall the evidence as they heard it." 10 RR 26-27. Because there was no ruling, there was no erroneous ruling. The appellant did not assert at trial, and does not claim on appeal, that the court erred by failing to rule.[13]

---

[13] To the extent that the fourth point of error is predicated upon the notion that the second objection challenged the prosecutor's arguments about how long it took the victim to die, that claim has not been preserved for appellate review. Defense counsel did not assert a timely objection to that testimony. *See* Tex. R. App. P. 33.1(a)(1). To the extent that the fourth point of error is based upon the trial court's action or inaction relating to the second objection, the appellant's claim has not been preserved for appellate review because defense counsel did not secure a ruling on that objection. An objection to closing argument must be pressed to the point

### iii. The remaining objections

Defense counsel's next objection occurred after the prosecutor began speaking directly to "[t]hose of you that are nurses, that work -- that are on the jury that work with patients that have problems with their airway." 10 RR 27. The objection was ultimately sustained, and the jury was instructed to disregard the remark. 10 RR 27. Defense counsel made a motion for mistrial, but that motion was denied. 10 RR 27. Because any error associated with that particular prosecutorial argument was cured by the instruction to disregard, the trial court did not abuse its discretion by denying the motion for mistrial. *See Williams v. State*, 270 S.W.3d 112, 138 (Tex. Crim. App. 2008), citing *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (grant of mistrial motion should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not have cured, the prejudice stemming from an event at trial).

---

of procuring a ruling, or the objection is waived. *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. 1979); *Thierry v. State*, 288 S.W.3d 80, 85 (Tex. App.—Houston [1st Dist.] 2009); Tex. R. App. P. 33.1(a)(2). In the instant case, the judge merely stated, "Again, the ladies and gentlemen of the jury will recall the evidence as they heard it." 10 RR 26. It is well settled that such a statement by the trial court does not constitute a ruling and is insufficient to preserve for appellate review a claim challenging the propriety of a prosecutor's closing argument. *See, e.g.*, *Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1975) (claim not preserved where judge stated, "Jury will recall the evidence"); *Nichols v. State*, 504 S.W.2d 462 (Tex. Crim. App. 1974) (claim not preserved where judge stated, "The jury will have to remember the testimony").

c. <u>Prosecutor's arguments concerning the victim's injuries</u>

Finally, the appellant also quotes the following portion of the State's final closing argument:

> MS. DEFORD:
> \*\*\*
> No one would choose the death that Kirstin suffered, beaten. Even Dr. Wood told you about those injuries on the top of her head where she saw internal hemorrhaging. She talked about how the muscles in her neck, there was hemorrhaging along the muscles along with that fractured thyroid cartilage, the injuries underneath the temple that was hemorrhaging underneath. This is an intentional act and all of this happened because Kirstin was going to call the police, because she was going to free herself from this man.
> And think about it, even in the first scenario when I asked you to indulge me, think about it. After only a few seconds when we start breathing again, it's a good feeling, but imagine the panic when you can't control it, you can't what is causing the pressure off your neck, you are fighting for your life. Imagine those final moments of Kirstin's life, what that must have been like.
> **MR. BROWNING: Your Honor, I object to -- the medical examiner testified that those are not the causes of her injuries -- that that was not the cause of her death. It was not the tracheal injuries.**
> **THE COURT: The ladies and gentlemen will recall the evidence as they heard it.**

10 RR 32-33 (emphasis added).

53

Defense counsel objected, but the trial court did not rule on the objection. Because there was no ruling, there was no erroneous ruling. The appellant did not assert at trial, and does not claim on appeal, that the court erred by failing to rule.[14]

5. <u>Any error was harmless</u>

"If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection cannot be reversible error unless, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict." *Pope v. State*, 161 S.W.3d 114, 126 (Tex. App. – Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006); *see* Tex. R. App. P. 44.2(b); *Martinez*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000).

In the instant case, if this Court finds that the trial court did abuse its discretion when it ruled against the appellant on one or more of his challenges to the prosecutor's closing argument, the Court should still overrule the fourth point of error for the reason that any such errors were harmless. Here, it was undisputed that the appellant caused the death of the victim. As defense counsel asserted in his brief closing argument, "I agree with [the prosecutor] that Mr. Roberts was the

---

[14] To the extent that the fourth point of error is predicated upon the trial court's action or inaction relating to this objection, the appellant's claim has not been preserved for appellate review. As was noted above, an objection to closing argument must be pressed to the point of procuring a ruling, or the objection is waived. Tex. R. App. P. 33.1(a)(2); *DeRusse*, 579 S.W.2d 224, 235; *Thierry*, 288 S.W.3d 80, 85. The trial court's response to the objection (i.e., "The ladies and gentlemen will recall the evidence as they heard it") did not constitute a ruling. *See, e.g.*, *Mayberry*, 532 S.W.2d 80, 84; *Nichols*, 504 S.W.2d 462.

cause of Kirstin Anderson's death, but I disagree about intentionally or knowingly. I believe what happened that night was a horrible accident." 10 RR 21; *see also* 8 RR 14-15 (comment made by defense counsel, during opening statement, that "what happened on the night in question was a horrible accident").

Relevant to that issue of *mens rea* were the admissions made by the appellant during his third recorded interview. For example, the appellant told Detective White, "I think, ahhh... That's what it was. I slapped her and freaked out thinking she was gonna call the cops and killed her. That's what it was…." State's Pretrial Exh. 3 at 15. He also told the detective, "That had to have been it. She mentioned my father, I slapped her, freaked out thinking I thought I was gonna lose it, go to jail, lose my job, be out back on the streets again for winter, so I just killed her." *Id*. The jury also heard the recording of the appellant's callous comment, "I agree, I saw red, killed her. Oops." *Id.* at 14.

It is true that the appellant had provided other versions of events to the detective. *See* State's Pretrial Exhibits 1 and 2. However, the physical evidence refutes those alternative versions of events. Considered as a whole, the evidence in the record provides strong support for the jury's verdict, as was pointed out above, in relation to the third point of error. On the issue of harm, the appellant argues, *inter alia*, that "the prosecutor stood before the jury and attempted to fill in the gaps in the State's case by interjecting nothing more than speculation…" App.

Brief at 31. Even if it were true that the comments at issue amounted to "speculation," those comments did not inject any material new facts into the case.[15] In light of defense counsel's concession that the appellant caused the victim's death, and the appellant's admission that he "saw red [and] killed her," it seems highly unlikely that the cited portions of State's closing argument had a substantial and injurious effect or influence on the verdict.

### 6. Conclusion

Because the appellant fails to challenge any ruling of the trial court, nothing is presented here for appellate review. However, if this Court does reach the merits of the appellant's claim, this multifarious point of error should be overruled because the challenged arguments of the prosecutor were reasonable deductions from the evidence, because the trial court did not abuse its discretion, and because any error was harmless.

---

[15] An argument could be made that the prosecutor injected new facts by commenting on "[t]hat gentleman who was on the jury" about his wife's breathing difficulties and by speaking directly to "[t]hose of you that are nurses, that work -- that are on the jury that work with patients that have problems with their airway…." 10 RR 26, 27. Those comments, however, were interrupted to some degree by objections and did not assert any facts of significance.

**PRAYER**

WHEREFORE, the State requests that the Court overrule all of the appellant's points of error and affirm the judgment of the trial court.

Respectfully submitted,
Rosemary Lehmberg
District Attorney
Travis County, Texas


/s/ M. Scott Taliaferro
M. Scott Taliaferro
Texas Bar No. 00785584
Assistant District Attorney
Director, Appellate Division
District Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Phone: 512.854.3626 Fax: 512.854.4810
Email: scott.taliaferro@traviscountytx.gov
and appellateTCDA@traviscountytx.gov


**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based on the computer program used to generate this brief, that this brief contains 14,574 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count.

/s/ M. Scott Taliaferro
M. Scott Taliaferro

## CERTIFICATE OF SERVICE

I hereby certify that, on the 9th day of September 2015, the foregoing State's brief was sent, via U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the appellant's attorney, Kristen Jernigan, Esq., 207 S. Austin Avenue, Georgetown, Texas 78626.

/s/ M. Scott Taliaferro
M. Scott Taliaferro